May it please the Court, my name is Jim Jellison. I represent former Deputy Richard Silva. Counsel, yes, please proceed. Thank you. Current case arises out of the December 10th, 2006 arrest of Plaintiff Saunders. Interestingly enough, the defendant, Deputy Silva, is not the deputy that actually effected the arrest. The arrest itself was effected by a Deputy Guthrie. Didn't he tell Ms. Saunders that she was under arrest? Well, we disputed that at the trial, but you are correct, Your Honor. The trial judge, who, and of course this was a bench trial and not a jury trial, found that at the church and not at the residence, Deputy Silva said to Ms. Saunders, you're under arrest. And then at that point, let her get into her own car by herself, with her own cell phone, to drive the five miles to Ms. Saunders' residence, where they could discuss the matter of her animals at the residence, as opposed to the church. And, Your Honor, your question really goes to the issue of constructive arrest. I don't think that this Court ever gets to that. I'm not sure my question mattered a lot. I was just saying that it's true that another arrest or an actual arrest that's not being challenged here was made. But the challenge here is to the arrest by your client. And the challenge here, to be more specific, is to the alleged constructive arrest by my client. And that's where I make that distinction. There was an actual arrest in this case. It occurred at the residence, and I don't want to quibble with you, but the district court was dealing with what he considered an arrest at the church, and then a transportation of Ms. Saunders to the her house, where I don't know what happened or why she didn't go inside or what their discussion was, and the record doesn't tell us and the judge doesn't tell us, but she remained outside with your client pending the arrival of the other officers. And I assume you want to tell us that the district judge was wrong, not because there wasn't an arrest, constructive or otherwise, but because you know the argument. Why don't you make it for yourself? And I think the assumption is correct. The problem in this case is we really ended up with a single Fourth Amendment-based 1983 claim for an unreasonable seizure. As my brief indicates, there was an excessive force claim that was found in Deputy Silva's favor. There were some other claims, other defendants and state law claims, and all of those went away on motion to dismiss. And there's no cross appeal as to those decisions or dismissals. The problem, of course, that we have in this case is the district judge never looked at the issue of probable cause and the district judge never looked at the issue of qualified immunity. And those are the places, the stopping points where he should have started in his analysis. And what he did instead is he said, well, listen, I think that Deputy Silva is an animal control officer. And although the record isn't clear because, quite frankly, the issue really didn't come up until the trial began. But what it appears that the district judge said to himself is, I think that Deputy Silva was an animal control officer. I don't think he was an Arizona post-certified officer who under state law is authorized to make an arrest. And therefore, because that technical violation of the state law in the district judge's conclusion existed, he said, I don't need to get to probable cause, I don't need to get to qualified immunity. He just shouldn't have arrested her because he's not a certified officer. I think the case that's dispositive of that issue and shows the error is this Court's decision in Berry v. Fowler from 1990, where except for very small aspects, is nearly factually on point. Did plaintiff allege in the suit a lack of probable cause at any point in time or by any defendant? During the – in the complaint or in the trial? Well, I'm trying to be as broad as possible. You know, I think the complaint presumed a lack of probable cause. But at the trial itself, you know, you had two criminal offenses. Some claims – some things have been dropped out before you got to trial. Is that correct? A number of things have dropped out. I'm trying to figure out where along the timeline probable cause was at issue. Did any of the dismissals prior to trial knock that issue out? No, they didn't. It did not. Okay. And I think probable cause in the qualified immunity context was definitely at issue in trial. I provided the Court with our statement of the issues and our memoranda to the judge. And, of course, you can see that in our mind probable cause needed to be decided. Were the deputies who actually made the arrest that led to her being booked and so forth, were they named defendants at the outset? I don't believe that they were. And that would be Guthrie and Murray and – I don't know that for sure, but I don't believe that they were. You're not suggesting, are you, that a court or that Silva's lack of authority under the state law could be a factor that the courts could consider in assessing the reasonableness of the arrest? My argument is that it is not a factor. And, again, my reliance in that proposition is Berry v. Fowler, where the court made – this court made it clear that the Fourth Amendment is not rooted in whether there's a state law violation. The Fourth Amendment analysis is rooted in whether or not it is reasonable under Supreme Court jurisprudence. And that is whether or not there was probable cause. And, of course, as to qualified immunity, there's that next level, whether or not there is arguable probable cause, is the true issue. But a simple reliance on whether the officer was certified or not certified under state statutes has no relevance as to whether or not the seizure was reasonable under the Fourth Amendment. And Berry tells us that. And the district judge erred by relying on that as a sole factor. And if you look at his findings, he made no determination on probable cause. He made no real determination on qualified immunity. In this case, as to the two criminal statutes that we're dealing with, on the record, there was clear probable cause. And I think the easiest one was the disobedience of a lawful order. There's a state statute that makes it a misdemeanor to disobey the lawful order of a court. Scalia. Even if there's probable cause, that wouldn't dispose of the entire case, would it? The question would still be, is the arrest carried out in a reasonable manner? Well, it would be that it would dispose of the entire case, because there was no other aspect of reasonableness that was decided against Deputy Silva. In other words That issue wasn't decided, you're saying. I believe that, in fact, it was, because there was an aspect of the seizure that was contested, and that was whether it was done with the use of excessive force. And the district judge specifically found that there was no excessive force in connection with the seizure at any level. As to Deputy Silva specifically, the district judge found that Deputy Silva never touched Ms. Saunders in any way, either at the church. I didn't say that it was excessive force. I said there is a question not of probable cause, not of excessive force, but whether the arrest was carried out in a reasonable manner. Going into or sending somebody into the church to remove the woman in her – from having her drive back to her house and stand outside in what either was or wasn't a sleeting or a raining moment for 45 minutes or so, that part of her complaint, that that was unreasonable. But that's not part of the district judge's findings. No, that's what I said. And didn't rule on that aspect of the complaint. Because he thought it was enough to rule on the fact that he wasn't a lawful Arizona peace officer. Well, to the extent that the district judge didn't rule on those issues – and by the way, I believe the district judge ruled on all the issues that were presented to him. In other words, you know, I was at the trial, and I don't recall there being – I recall there being an issue about the weather and all of that being discussed, but I really don't recall Saunders making a real heavy argument that the arrest was unreasonable because of those factors. So it's your idea that because the district court did not make any reasonableness findings, which I agree with my colleague, I don't think they did, you think that the plaintiff waived that issue? And that's where I was headed. I was told that there's no cross-appeal by this plaintiff, that, hey, the district judge erred because, hey, there was another aspect of reasonableness that was under consideration, and he ignored me, and he didn't make a ruling on that. You know, if in fact the district court just failed to make the ruling at all, then it's your idea that it's waived. If supposing it isn't waived, then should we remand for the district court to determine that? I think that it – well, and your assumption is that it has not been waived, because I hope the court understands. Well, that wasn't my assumption. That was the assumption of the question. Yeah. No, because I clearly believe it's been waived, but at the very least, if you felt that the district judge erred in that regard, this panel is not – does not have the information in order to make that determination. If it had been raised, in fact, my brief would be different. I would cite different parts of the record. I would make different arguments. That's why I think it's been waived. But if you undergo that assumption, then the district judge would be the only one in the position to make further determinations. And it really, if not waived, qualified immunity as to that particular issue has really not been raised either. Well, on that particular issue, and I just don't think, Your Honor, it was part of the trial. That's where I come down. When you took the excessive force out of the mix because of the alleged touching or groping or whatever you call it, we were truly only left with probable cause. But under the facts of this, we're actually left with another issue, and it goes to where I started. This is a constructive arrest case as to Silva. And it's undisputed that Silva never touched Saunders. At least, that's the Court's findings, and that's not being asked by ñ nobody is being asked or is asking this Court to disturb that. And under California v. Hodari D, for there to be an unreasonable seizure, because that's what the Fourth Amendment's about, not unreasonable arrests, unreasonable seizures. There's got to be a seizure. And just as in that case, if the police officer had yelled at Hodari and said, stop, you're under arrest, it wouldn't change the conclusion that was reached by the U.S. Supreme Court. And that is, without any kind of physical control, dominion, touching, you just don't have a constructive arrest. I'd like to reserve, if I could, the remaining 1 minute and 45 seconds I have. Thank you, Your Honor. Certainly. Thank you. Good morning. You have the pleasure, Your Honor. I'm William Forden. I'm representing the appellant, or excuse me, the appellee, Ms. Saunders. I think if you could stand right in front of the mic, it would be easier for us to hear you. Thank you, Your Honor. William Forden. I represent the appellee, Carol Saunders. The hard – I think that Judge Carol's analysis is correct, and I think that what happened here, and you can sugarcoat it any way you want to, is that this defendant who's working for Yavapai County is not a police officer, he's an animal control officer, has not the – has not got the ability or the right to be a police officer and has not got the right to be even arrest someone. What makes that a Federal constitutional violation? Because it's an unreasonable search – excuse me, it's an unreasonable seizure. It's an unreasonable arrest. He arrested him. Is there any authority that supports the proposition that you're offering? Now, I read Judge Carol's decision the same way that you do, and I don't think that's a Federal violation. That's a matter of State law who has the authority to arrest. That doesn't turn into a Federal violation. If there's probable cause for arrest, maybe the wrong people committed the arrest, but I don't see how that's a Federal constitutional claim. Well, I appreciate your point there, Your Honor. And I think that it's implicit in Judge Carol's findings that this was – that there was not probable cause for arrest. What changed later? I don't see a claim here that she was arrested, and I don't see a claim here that she was – the arrest that was accomplished lacked probable cause. Frankly, I don't see in your papers an allegation that that's an issue now. Is it an issue now? Well, the – and from what I've read, I don't see how it could be an issue. There's no question but that she had violated what had previously been set out as the probable cause for arrest. And I don't see a claim here that that's an issue now. Your Honor, the – the problem that I see with your analysis there is that the – the probation that she was under didn't – if she – the terms of the probation, and it's a small little rural town in northern Arizona, but the terms of the probation were that if you violate the probation, I, the State, can revoke your probation. Not that the – not that the State can arrest you, but the State can come to me, the justice of the peace, and I can revoke your probation. Is there no claim that she – was there probable cause that she had committed a misdemeanor offense? No, sir. That's absolutely not. No question about the condition of the animals, no basis for the animal control officer to express the same fear expressed before, which resulted in the probation that she was under at that time? If you look at Judge Carroll's factual findings, Your Honor, you'll find that he considered that, and there was, in fact, you know, he – in those findings, he went, you know, into considerable length to talk about her experience. The fact that there was, in fact, at the – you know, in the light of day, as it came forward in the courtroom, there was, in fact, nothing improper about the way that Ms. Saunders was arresting – excuse me, was caring for her animals. There were pictures, there were movies, testimony, convincing evidence. The judge was convinced that there was absolutely nothing wrong out there, and that's implicit in his ruling. Please point me to a finding. Well, I mean, I'm looking at finding 21. Silver reported the dogs had frozen water, eight horses had no water, and insufficient food. Saunders told him food was being delivered. That doesn't mean there was food there. But it doesn't – but there's also, Your Honor, I mean, if you look at that, and certainly it's an issue that we dealt with, and I appreciate your concern with it. What it doesn't say is that the – it doesn't say there was no food there. There was, in fact, food there. Not what it says. If you look at number 10. Number 21. Silver reported there was insufficient food. Saunders didn't say there was food. Saunders told him that food was being delivered. Well, I'm not saying that she was guilty of the alleged violations, but I don't see anything in here that supports the proposition that there wasn't probable cause to believe that she had violated the statute. And if there's probable cause, and your case depends entirely upon who made the arrest, whether it was somebody who arguably did not have the authority or the deputy who came later who unquestionably did and who was not found for having arrested her without probable cause, it seems to me the whole case and the whole finding depends upon the notion that he didn't have the authority to arrest. And that's a State law proposition, not a Federal constitutional provision as I see it. So I don't see what the basis for a 1983 claim is. Well, Your Honor, first off, if you take Mr. Jellison and put the case very well and you take the Yadapai County's argument, it really tends to eviscerate the Fourth Amendment and the fact that it's going to be. Stop. Stop. What I said is that the question is not whether there was probable cause, but who can make the arrest. How does the question of who can make the arrest eviscerate the Fourth Amendment? If it's not disputed that the deputies who came later had authority to make the arrest, how is the Fourth Amendment eviscerated by the arrest of her some hours before constructively by the animal control officer? For several reasons, Your Honor, one of which is the reasonableness of his activities. In other words, he knew very well where she was. He could easily – and he had been to her house many times. Why – you know, I think what the implication here is that he did this out of spite and not out of good faith. And this argument about probable cause and qualified immunity is designed to protect honest officers who, acting in good faith, may make a mistake as to what the applicable law is. That is far from what happened here. He had no reason to go to her church on Sunday morning in front of her neighbors and associates, friends, and arrest her at that church. And it would be similar, Your Honor, to – you all have bailiffs, I presume, here. There are people that have governmental authority. They're not allowed to arrest. And if you say that, you know, because the – this man had no authority to carry a gun. He had no authority to arrest. He had no – and why – you know, you look at this whole thing, and it has an odor about it, and that's what Judge Carroll picked up. And I don't think we're looking at – I think we're looking at the substantive and the heart of the Fourth Amendment. And this gentleman, this Mr. Silva, was not acting under any kind of good faith at all. And I think that the – that's my response, Your Honor. Qualified immunity, we respect police officers, and we expect police officers to make honest mistakes. This was so far from that, Your Honor. All right. Thank you, sir. Is that it? Any other? Do you have anything else? No, sir. Thank you. I think I can be fairly brief. In Saunders' responsive brief, there's really no argument against the application of Berry v. Fowler to the facts of this case. In Saunders' responsive brief, there is no argument that probable cause was lacking or that arguable probable cause was lacking. Additionally, in Saunders' brief, there was no argument and certainly no case law cited to show that the facts of this case create a constructive discharge or, excuse me, a constructive arrest. I think that when you look at this in totality, it is very clear that there was not just arguable probable cause, but there was actual probable cause. I think it's clear that when you look at this case, that in terms of even the manner in which Ms. Saunders was handled based on the trial judge's findings, there's not any case law that would show this deputy that the manner in which Ms. Saunders was dealt with was clearly violative of some type of constitutional provision. Without those things, he's entitled to qualified immunity, and he's entitled to that as a matter of law. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Clifton, Smith